UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**14 CV 2902**

------------------------------------------------------------------X

MONGIELLO'S ITALIAN CHEESE SPECIALTIES, INC.
d/b/a FORMAGGIO,

Docket No.:

C V No.:

v.

EURO FOODS INC. d/b/a CITTERIO USA CORPORATION,

------------------------------------------------------------------X

JUDGE SWAIN

RECEIVED

2014

## COMPLAINT AND JURY DEMAND

Plaintiff MONGIELLO'S ITALIAN CHEESE SPECIALTIES, INC. d/b/a

FORMAGGIO ("Plaintiff" or "Formaggio") by its attorneys Appell & Parrinelli by way of

Complaint against Defendant, EURO FOODS INC. d/b/a CITTERIO USA

CORPORATION ("Defendant" or "Citterio"), alleges as follows:

## NATURE OF THIS ACTION

1.) This civil action arises out of Formaggio's voluntary and mandatory recall of

thousands of pounds of a product known as Artisan Wrap which consisted of mozzarella

sticks wrapped with ready-to-eat sopressata meat after it was discovered that the

product was contaminated with the presence of a bacterial strain of Listeria

monocytogenes in both its product and/or processing plant.

2.) Formaggio had entrusted Citterio with manufacturing, preparing, processing,

packaging and handling this customized sopressata meat product which in turn would

be sent to Formaggio which would slice the sopressata and wrap their own mozzarella

stick product and sell and distribute it to large retailers. Citterio knew full well that such

sopressata product if not properly made under sanitary conditions or subjected to

proper lethality procedures was at risk of being adulterated and contaminated with Listeria monocytogenes and/or subject to recall, the business repercussions to Formaggio would be devastating. Nevertheless, Citterio failed to properly protect and guard against such risk of contamination and failed to produce and deliver a meat product that was safe and of merchantable quality.

3.) Consequently, upon finding contamination of the Artisan Wrap product Formaggio had to voluntarily recall its product from the shelves of its major customers and discontinue production on several occasions and was subject to voluntary and mandatory recalls of their product. As a result, Formaggio has incurred substantial loss of profits, destruction of product expenses in recalling and withdrawing their product, business costs to prevent such contamination from occurring again, business costs to sanitize their products and plant environment, contract costs to remain open and consequential labor costs and expenses.

4.) Formaggio seeks to recover against Citterio under common law theories of breach of implied warranty of merchantability and statutory theories under the Uniform Commercial Code and seeks declaratory judgment as to its rights for any amounts Citterio claims it is owed.

## THE PARTIES

5.) Formaggio is a domestic corporation authorized to do business in the State of New York with its principal place of business located at 250 Hilldale Road, Hurleyville, New York 12747.

6.) Formaggio produces, sells and distributes various mozzarella cheese products, including the Artisan Wrap product to major supermarkets, retailers and wholesalers throughout the United States, and internationally.

7.) Upon information and belief, Citterio is a foreign business corporation authorized to do business with the Secretary of the State of New York in the County of Queens with its principal place of business located at 2008 State Route 940 Freeland, Pennsylvania 18224 and/or a principal New York executive office at 51-15 35th Street, Long Island City, New York 11101.

8.) Upon information and belief, Citterio manufactures, produces, processes and distributes meat products nationwide, with its products made available to wholesalers, vendors, retailers and consumers throughout the United States since at least 1973.

## JURISDICTION AND VENUE

9.) This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a) because the action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

10.) This Court has personal jurisdiction over Citterio because it is a foreign corporation authorized to do business in the State of New York and this cause of action arose from a contract to supply goods or services in New York.  This Court also has personal jurisdiction over Citterio because Citterio regularly transacts business in New York and has committed a tortious like act without New York State causing injury within the State and regularly does or solicits business within New York and engages in persistent conduct or derives substantial venue from goods used or consumed in New

York or expects or should reasonably expects the acts to have consequences in New York and denies substantial revenue from interstate commerce.

11.) Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 (a) because a substantial part of the events or omissions giving rise to the claims herein occurred and a substantial part of property that is subject of the action is situated in the Southern District of New York.

## FACTS RELEVANT TO ALL CLAIMS

12.) That at all times mentioned herein, Formaggio is a company in business since 1992 which manufactures, sells, and distributes mozzarella cheese products to major retailers throughout the United States and internationally.

13.) Formaggio has since its inception placed tremendous emphasis on selling products which are safe for human consumption. Formaggio has worked long and hard to manufacture, distribute and sell only the most sanitary of mozzarella cheese products and has developed and earned its reputation as a leading provider of these products.

14.) Formaggio in the normal course of its business as a food manufacturer has at all times mentioned herein and since at least 2006 through independent laboratories tested its products, plant and facilities for the presence of a bacteria known as Listeria with a reputable independent laboratory. This laboratory prior to the events herein has never found the presence of any bacterial strain of Listeria at or in any of Formaggio's facilities, environment or product.

15.) That at all times mentioned in this Complaint, Citterio is the owner of a company which manufactures, produces, sells, and distributes meat products including but not limited to ready-to-eat meat products to wholesalers and/or retailers.

16.)That at all times mentioned herein Citterio operated its business out of 2003 State Route 940 Freeland, Pennsylvania 18224.

17.) That at times prior to the events described in this Complaint, Citterio had contracted to manufacture ready-to-eat meat products for Formaggio.

18.) That at all times prior to the events described in this Complaint, Citterio had sold, distributed and delivered ready-to-eat meats to Formaggio.

19.) That at all times mentioned in this Complaint, Citterio had the duty to manufacture ready-to-eat meat products which, were clean, sanitary, safe and free of bacterial contaminants and/or adulteration.

20.) That at all times mentioned in this Complaint, Citterio had the duty to perform lethality procedures on all of its ready-to-eat meat products prior to the distribution and delivery of these products to its wholesale and/or retail customers, including Formaggio.

21.) That at all times mentioned in this Complaint, Citterio had a duty to inspect all of its ready-to-eat meat products prior to the sale, distribution and delivery of these products to its wholesale and/or retail customers including Formaggio.

22.) That at all times mentioned in this Complaint, Citterio warrantied to Formaggio that prior to the distribution and sale of its ready-to-eat meat products to Formaggio, that these products would be fit for a particular purpose and/or merchantable.

23.) That at all times mentioned in this Complaint, Formaggio, upon its purchase of ready-to-eat meat products from Citterio, relied on the statements and assurances by Citterio that their ready-to-eat meat products were clean, sanitary, fit for a particular purpose, safe, bacterial free, merchantable and that Citterio was capable and

knowledgeable in the production of these products which, Formaggio could sell in conjunction with its own cheese products.

24.) That at all times mentioned in this Complaint, Citterio was fully aware that Formaggio was relying on the fact and assurances by Citterio that these ready-to-eat meat products were clean, sanitary, fit for a particular purpose, safe and merchantable.

25.) That at all times mentioned in this Complaint, Citterio had the duty to manufacture all of its ready-to-eat meat products in compliance with all applicable laws and regulations of the United States Department of Agriculture and any and all other Federal, State and local municipal public authorities.

26.) That prior to the events described in this Complaint, Formaggio also had in place a Hazard Analysis and Critical Control Point plan (commonly known as a "HACCP" plan) for production of all of its products which, had been approved by all regulatory agencies which govern their food products.

27.) That prior to the events herein, Formaggio, as part of its business, had never been required to implement any lethality procedures or testing for any of its products as part of its HACCP plan since Formaggio did not manufacture, distribute or sell any raw dairy or raw meat that was subject to bacterial contamination and/or adulteration.

28.) That prior to the events described in this Complaint, Formaggio had never been subject to any recall of its food products by any Federal or State food and health regulatory agency for any bacterial contaminated strain of organism in its entire existence.

29.) That on or about August 16, 2012, Formaggio designed a new product known as an Artisan Wrap wherein a stick of pasteurized mozzarella cheese would be wrapped

in a standard size and shape prepackaged Citterio ready-to-eat meat product including, but not limited to sopressata. In turn, the meat would be sliced in Formaggio's plant and hand wrapped around the mozzarella stick under the strictest of sanitary conditions. The product would then be sold and distributed to major retailers throughout North America. The product was made only after the major retailers ordered the product to maintain freshness. Shipments of the Artisan Wrap product began and continued in September through December 2012 in the United States and Canada successfully.

30.) That on or about November 7, 2012 Formaggio contracted with Citterio for Citterio to manufacture a special customized ready-to-eat sopressata meat product with specific dimensions at its plant and facilities located in Freeland, Pennsylvania.

31.) Pursuant to all applicable Federal and State laws, it was the duty of Citterio to manufacture, produce, sell and distribute this special customized ready-to-eat sopressata meat product after performing the required lethality procedures so that the product was safe for human consumption and free of contamination and/or adulteration of bacteria such as Listeria monocytogenes.

32.) That at all times mentioned in this Complaint, Citterio provided assurances to Formaggio that the special customized sopressata ready-to-eat meat product would undergo all of the necessary lethality procedures and tests so that any product sold or provided to Formaggio would be safe for human consumption and free of contamination and/or adulteration of bacteria such as Listeria monocytogenes.

33.) Upon information and belief, between November 2012 and January 2013, Citterio commenced production of the initial lot of this special customized ready-to eat

sopressata product for Formaggio at Citterio's plant and facilities located in Freeland, Pennsylvania.

34.) Upon information and belief, the special customized ready-to-eat sopressata product was being manufactured by Citterio under the supervision solely of Citterio management and employees.

35.) At no time did Formaggio or its employees supervise or control the manufacture of this special customized ready-to-eat sopressata product at Citterio's plant and facilities except to request from Citterio that the product be supplied in a specific diameter stick so that Formaggio employees could effectively slice the sopressata manually on slicing machines and hand conform the slices to the mozzarella sticks and sell and distribute the Artisan Wrap product to major retailers.

36.) That on or about January 11, 2013, Citterio shipped and began to deliver to Formaggio special customized ready-to-eat sopressata meat product.

37.) That on or about February 6, 2013, Formaggio, in its designed and sanitized areas and zones of its plant and facility, began to manufacture and distribute the Artisan Wrap products to major retailers utilizing Citterio's special customized ready-to-eat sopressata product.

38.) That on or about February 27, 2013, Formaggio began to sell and distribute to major retailers in Canada the Artisan Wrap product now using Citterio's special customized ready to eat sopressata product.

39.) On or about March 12, 2013, Formaggio was notified that the Canadian Food Inspection Agency had in one of its port of entry holding areas found that the Artisan Wrap product awaiting distribution to the retailer Costco was contaminated and

adulterated with Listeria monocytogenes which, required a voluntary recall of the entire product both from the port of entry holding areas and from the shelves of the major retailers in Canada that already had the product in stock all of which resulted in a total loss of all its product thereat.

40.) Upon information and belief, in or around March 2013 Formaggio had no knowledge as to the source, if any, of the Listeria monocytogenes product in its Artisan Wrap product which had been identified by the Canadian Food Inspection Agency.

41.) That upon information and belief, during April 2013, Citterio continued to produce the customized ready-to-eat sopressata product for Formaggio and on or about April 12, 2013, Citterio shipped another lot of the product.

42.) That upon information and belief, on or about April, 2013, the Unites States Department of Agriculture Food Safety Inspection Service ( "USDA" "FSIS") performed a food safety audit of Formaggio's plant and facilities and found Listeria monocytogenes in the areas and zones where the Artisan Wrap product was being manufactured, assembled, and stored.   This included predominantly the food slicing machines where the Citterio special customized ready-to-eat sopressata product was being sliced and handled.

43.) That on or about April 18, 2013, the USDA FSIS notified Formaggio that its inspection and testing found Listeria monocytogenes on the special customized sopressata ready-to-eat product slicing equipment, tables and other hand contact surfaces in the area of the Artisan Wrap environment and around the area of Artisan Wrap production and issued a suspension of product production.

44.) That at all times thereafter, Formaggio painstakenly and with much time, effort, and money attempted to rid itself of the Listeria monocytogenes bacteria in and around the contaminated areas of its plant and facilities which contamination was ultimately determined to be caused by the acts and/or omissions of Citterio.

45.) That on or about April 24, 2013, the USDA FSIS, as part of its continuing monitoring of the Artisan Wrap and products which included meat and cheese together, notified Formaggio of a suspension to be held in abeyance of its production and distribution and reinstated Formaggio's right to manufacture and produce its Artisan Wrap products. There was no suspension of the distribution and sale of the remainder of Formaggio's product which only contained cheese as there was no contamination with Formaggio's own cheese products or cheese environment.

46.) Again at all times thereafter, with painstaking time, effort, and money Formaggio attempted to rid itself of the Listeria monocytogenes bacteria in and around the contaminated areas of its plant and facilities which contamination was ultimately determined to be caused by the acts and/or omissions of Citterio.

47.) That on or about May 30, 2013, Formaggio again ordered, and on June 7, 2013 Citterio shipped and delivered, more ready-to-eat meat product, including but not limited to the special customized ready-to-eat sopressata product.

48.) That on or about June 18 & 19, 2013 the USDA FSIS during its inspection of Formaggio's plant and facilities found Listeria monocytogenes solely in those areas of the Artisan Wrap product and suspended Formaggio from production.

49.) That on or about June 17, 2013, Formaggio notified Citterio about problems they were having with the Citterio product and on June 19, 2013, after a long meeting

between the executives of Formaggio and those from Citterio. Citterio themselves decided on June 28,2013 to take back 13,309 pounds of its special customized ready-to-eat sopressata product which had already been shipped to Formaggio due to, upon information and belief, Citterio's knowledge of the contaminated and/or defective condition of its ready-to-eat sopressata meat product.

50.) This aforementioned return of product by Formaggio to Citterio was due entirely to the failure of Citterio's quality control and failure in its lethality steps and sanitization of its own product.

51.) That on or about July 30, 2013, the USDA FSIS again, during its inspection of the Formaggio plant and facilities, found Listeria monocytogenes in and around the production and storage areas of the Artisan Wrap product and suspended Formaggio from production yet again.

52.) That on or about September 24, 2013, the USDA FSIS, again during its inspection of Formaggio's plant and facilities, found Listeria monocytogenes in and around the plant and product.

53.) That on or about October 3, 2013 the USDA FSIS notified Formaggio that Canadian officials found Listeria monocytogenes in product stored in a Canadian transfer station and Canadian officials ordered immediate destruction of the product.

54.) That on or about October 14, 2013, Citterio re-delivered to Formaggio the special customized ready-to-eat sopressata meat it took back months before after claiming that it high pressured pasteurized both this specific meat and the remainder of the sopressata it still had at its own plant.

55.) That on or about October 22, 2013, the USDA FSIS notified Formaggio Listeria monocytogenes was found in two separate deliveries of product being stored in a Canadian transfer station resulting in the Canadian officials ordering the immediate destruction in the transfer station. Formaggio was then forced to recall all of its product from customer shelves.

56.) That at or between all of the aforementioned times, Formaggio continued to painstakingly determine the origin of the contamination and attempt to cure the problem which ultimately was determined to be caused by the acts and/or omissions of Citterio.

57.) That only after having removed the slicing machines which were used exclusively to slice Citterio's customized special ready-to-eat meat sopressata and cleansing those areas which came into contact with Citterio's same product was Formaggio able to rid itself of Listeria monocytogenes.

## FIRST CAUSE OF ACTION BREACH OF WARRANTIES

58.) Formaggio repeats and realleges each and every allegation set forth in paragraph 1 through 57 above as if fully set forth again.

59.) Pursuant to New York Uniform Commercial Code ("UCC") §2-313 (express warranty) and §2-314 (implied warranty of merchantability and fitness for a particular purpose) and any applicable related Pennsylvania warranty or Uniform Commercial Code statutes, Citterio expressly and impliedly represented to Formaggio that its products, including but not limited to, its ready-to-eat meat sopressata product were safe, clean and proper for their intended and ordinary use, purpose and consumption and were of a merchantable quality.

60.) That at all times mentioned in this Complaint, Citterio, as a manufacturer in the industry of ready-to-eat meat products, was well aware that the products it manufactured, distributed and sold to Formaggio were intended to be resold to retailers and consumers for human consumption. In fact Formaggio did just that.

61.) That at all times mentioned in this Complaint, Citterio designed and manufactured a defective product that was contaminated with Listeria monocytogenes which defective product was delivered to Formaggio and contaminated Formaggio's products and plant.

62.) That at all times mentioned herein, Citterio breached its warranties of merchantability and fitness for a particular purpose by manufacturing, distributing, selling and delivering ready-to-eat meats, including but not necessarily limited to the customized sopressata product to Formaggio which were contaminated with Listeria monocytogenes making such meat product subject to mandatory and voluntary recalls.

63.) That at all times mentioned in the Complaint, Citterio violated all applicable law, statutes and regulations, including but not limited to all applicable sections of the United States Code, Code of Federal Regulations and rules and regulations of the USDA and all administrative agencies with jurisdiction over Citterio.

64.) That at all times mentioned herein, as a direct and proximate result of the continued manufacture, distribution, delivery and sale of the aforementioned contaminated meat products to Formaggio and the failure to properly inspect the product prior to delivery, Formaggio's products and plant became infected and contaminated with Listeria monocytogenes thereby resulting in irreparable harm and damage.

65.) That at all times mentioned, Formaggio has as a result suffered direct and consecuential damages, including, but not limited to, extensive loss of current and future business and profits, loss of customers, loss of reputation and good will in the industry, expenses and costs to eradicate Listeria from the product and plant, recall the product both voluntarily and as a result of United States and Canadian food agencies, remove the product from retailer's shelves and stores, set up and attend a hotline to answer consumer and customer questions, install required cleaning and sanitation prevention devices and modalities as now required by the USDA to remain open, incur laboratory costs, transport, pasteurize and cleanse all products and materials which enter Formaggio's plant, incur additional labor and wage related expenses, destroy contaminated products, test and cleanse all products and materials coming in and out of its plant and facilities, travel to meetings with federal regulators, to purchase substitute goods and products at increased expenses and incur all other costs and losses both incidental, direct and consequential which flow and are as a direct result of the acts and/or omissions of Citterio. Formaggio is also entitled to all protections and rights under all applicable provisions of the Uniformed Commercial Code and all federal and state statutes and laws.

66.) That said damages to compensate Formaggio both past and future continue and will continue for years and are not yet fully determinable but will be proven and determined at trial, and which under the circumstances would be anticipated to arise but believed to be well in excess of Ten Million ($10,000,000.00) Dollars on this Cause of Action.

## SECOND CAUSE OF ACTION BREACH OF CONTRACT

67.) Formaggio repeats and realleges each and every allegation set forth in paragraphs 1 through 66 above as if fully set forth again.

68.) As fully set forth above, Formaggio and Citterio entered into contract both expressly and impliedly through documents, invoices, agreements written and/or verbal, communications, emails and course of dealings that the ready to eat meat products manufactured distributed and sold by Citterio to Formaggio, including, but not limited to, the customized ready-to-eat sopressata product would be free of bacteria, including Listeria monocytogenes and other contaminants and that the product would be clean and sanitary and safe for human consumption and in compliance with all federal, state and local municipal laws and free from recalls both mandatory and voluntary.

69.) That Formaggio has fully complied with all of its contractual obligations as required by all applicable Uniformed Commercial Code provisions and other laws and rules.

70.) That at all times mentioned, Formaggio has as a result suffered direct and consequential damages, including, but not limited to extensive loss of current and future profits, loss of customers, loss of reputation and good will in the industry, needless expenses and costs to and for; eradicate Listeria from the product and plant, to recall the product both voluntarily and as a result of United States and Canadian food agencies, to remove the product from retailer's shelves and stores, to set up and attend a hotline to answer consumer and customer questions, to install required cleaning and sanitation prevention devices and modalities as now required by the USDA to remain

open, laboratory costs, to transport, pasteurize and cleanse all products and materials which enter Formaggio's plant, of additional labor and wage related expenses, to destroy contaminated products, to test and cleanse all products and materials entering and exiting its plant and facilities, travel to meetings with federal regulators; and all other costs and losses both incidental, direct and consequential which flow and are as a direct result of the acts and/or omissions of Citterio. Formaggio is also entitled to all protections and rights under all applicable provisions of the Uniformed Commercial Code and all federal and state statues and laws.

71.) That said damages to compensate Citterio both past and future continue and will continue for years and are not yet fully determinable but will be proven and determined at trial, and which under the circumstances would be anticipated to arise but believed to be well in excess of Ten Million ($10,000,000.00) Dollars on this Cause of Action.

## THIRD CAUSE OF ACTION

72.) Formaggio repeats and realleges each and every allegation set forth in paragraphs 1 through 71 above as if fully set forth again.

72 a.) That at all relevant times herein, Formaggio purchased ready-to-eat meat product from Citterio.

72 b.) Citterio contends and alleges that Formaggio owes it approximately $85,000.00 for the ready-to-eat meat product that was ultimately found to contain Lysteria Monoctogenes.

73.) That at all times mentioned in this Complaint when Formaggio became aware that the ready-to-eat meat products, including but not limited to the customized

sopressata manufactured, produced, distributed, delivered and sold to them from Citterio was contaminated and adulterated with Listeria monocytogenes Formaggio elected not to pay Citterio for the contaminated product and other products which had to be destroyed as a result pursuant to the cause of action of this action and was forced to purchase the same product from other vendors at increased costs and expenses.

74.) That at all times mentioned in this Complaint Formaggio has exercised their rights under the New York Uniform Commercial Code and all relevant applicable statutes not to pay Citterio for this contaminated product. Formaggio has instead elected to exercise their rights pursuant to UCC § 2-711 (rightful rejection or justifiable revocation) and §2-712 (procurement of substitute goods) and §2-714 (recovery of damages due to non-conformity of tender) and §2-715 (recovery of incidental and consequential damages) and §2-717 (deduction of damages due to breach) and not pay Citterio the remainder of monies that Citterio claims Formaggio owes them for the defective product and to seek reimbursement of any and all amounts already paid to Citterio.

74 a.) There has been and continues to be an actual case and controversy between Citterio and Formaggio concerning Formaggio's obligation to pay Citterio for adulterated goods and goods destroyed because of Citterio's contaminated ready-to-eat meat product.

75.) In order to resolve this controversy, Formaggio requests that, pursuant to 28 USC 2201. this Court declare the respective rights and duties of the parties in this matter and, in particular, declare that Formaggio be relieved of its contractual

obligations, in accordance with all applicable UCC provisions and all other applicable rules and regulations.

76.) That as a result of Citterio's manufacture, sale and delivery of contaminated product, Formaggio has not paid Citterio amounts owed for other products Citterio provided since these other products had to be destroyed as part of the mandatory and voluntary recalls.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays as follows:

(1) That the Court award the Plaintiff judgment against Defendant for damages.

(2) That the Court award all such other sums as shall be determined to fully and fairly compensate the Plaintiff for all general, special, incidental and consequential damages incurred, or to be incurred, by the Plaintiff as the direct and proximate result of the acts and omissions of the Defendant.

(3) That the Court award the Plaintiff their costs, disbursements and reasonable attorneys' fees incurred;

(4) That the Court award the Plaintiff the opportunity to amend or modify the provisions of this Complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served; and

(5) That the Court, pursuant to 28 USC 2201, declare the rights and responsibilities of the parties herein covering the payment for the contaminated ready-to-eat meat product and other product destroyed as a result of Citterio's adulterated product.

(6) That the Court award such other and further relief as it deems necessary and proper in the circumstances.

## JURY TRIAL DEMAND

Plaintiffs demand trial by jury on all issues raised herein.

Dated:   New York, New York
April 23, 2014

JOHN J. APPELL, ESQ.
APPELL & PARRINELLI
Attorneys for Plaintiff-Formaggio
3 West 35th Street, 6th Floor
New York, New York 10001
(212) 947-0101

## VERIFICATION

STATE OF NEW YORK )
                            ) SS.
COUNTY OF NEW YORK )

      ANTHONY MONGIELLO, hereby affirms as true, under the penalty of perjury that affirmant is the President of the Plaintiff corporation and I have read the foregoing COMPLAINT and know the contents thereof; that same is true to affirmant's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that those matters affirmant believes to be true.

Dated: New York, New York
        April 23, 2014

                                         _____
                                         ANTHONY MONGIELLO

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MONGIELLO'S ITALIAN CHEESE SPECIALTIES, INC.
d/b/a FORMAGGIO,

vs.

EURO FOODS INC. d/b/a CITTERIO USA CORPORATION.

SUMMONS AND COMPLAINT

*Appell & Parrinelli*
ATTORNEYS AT LAW

3 WEST 35TH STREET, 6TH FLOOR
NEW YORK, NEW YORK 10001
(212) 947-0101

*To:*

*Attorney(s) for*

*Service of a copy of the within*        *is hereby admitted*

*Dated:*

*Attorney(s) for*

*PLEASE TAKE NOTICE*

☐ NOTICE OF
ENTRY

*that the within is a (certified) true copy of a*
*entered in the office of the clerk of the within named Court on*      20

☐ NOTICE OF
SETTLEMENT

*that an Order of which the within is a true copy will be presented for settlement to the Hon.*
*one of the judges of the within named Court,*
*at*
*on*      20    *at*     *M.*

*Dated:*

*Appell & Parrinelli*
ATTORNEYS AT LAW

3 WEST 35TH STREET, 6TH FLOOR
NEW YORK, NEW YORK 10001
(212) 947-0101

*To:*

*Attorney(s) for*